

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

COLLIN KNIGHT, a Minor, By　)
and Through His Next Friend,　)
PAUL KNIGHT,　)
　　　　　　Respondent,　)
　)
v.　) **WD82860**
　)
NELSON KNIGHT and VIOLET　) FILED: July 14, 2020
KNIGHT,　)
　　　　　　Respondents,　)
STATE FARM FIRE and　)
CASUALTY COMPANY,　)
　　　　　　Appellant.　)

### Appeal from the Circuit Court of Boone County
### The Honorable J. Brouck Jacobs, Judge

### Before Division Three: Lisa White Hardwick, P.J., and
### Alok Ahuja and Thomas N. Chapman, JJ.

State Farm Fire and Casualty Company insured husband and wife Nelson and Violet Knight under a personal liability umbrella policy. The Knights were sued by their grandson, Collin Knight, for injuries which Collin suffered in a watercraft accident while under the Knights' supervision.[1] State Farm refused to defend the Knights, and disclaimed coverage for the accident, in reliance on a policy exclusion. The Knights then entered into a settlement agreement with Collin under

---

[1]　Because the underlying plaintiff and defendants share the same last name, for sake of clarity we use Collin Knight's first name to identify him. No familiarity or disrespect is intended.

§ 537.065.[2]  In the agreement, Collin agreed to seek recovery solely from the Knights' insurance.  The agreement also specified that, at Collin's option, his claims against the Knights would be resolved by binding arbitration.

An arbitration was conducted at which (as required by the § 537.065 agreement) the Knights did not object to any of Collin's evidence, cross-examine his witnesses, or present evidence of their own.  The arbitrator awarded Collin $6 million in damages against Nelson Knight; the arbitrator also found that Collin had failed to prove his negligence claims against Violet Knight.  After the arbitration proceedings had concluded, the Knights notified State Farm of the § 537.065 agreement, and State Farm was granted leave to intervene in Collin's lawsuit.  The circuit court later confirmed the arbitration award against Nelson Knight, over State Farm's objection.

State Farm appeals.  It argues that, under the current version of § 537.065, it was entitled to a jury trial at which it could dispute Nelson Knight's liability for Collin's injuries, and the extent of Collin's damages.  State Farm contends that, by confirming the arbitration award, the circuit court denied State Farm its constitutional rights to due process, to a jury trial, and to access the courts.  State Farm also argues that the arbitration award should not have been confirmed because it was procured through "undue means" within the meaning of § 435.405.1(1), and because there was no existing controversy between the Knights and Collin at the time of the arbitration.

We affirm.

### Factual Background

Collin was injured on August 1, 2015 in an accident on Thomas Hill Lake in Randolph County, while he was operating a Jet Ski personal watercraft.  Collin was

---

[2]     Unless otherwise indicated, statutory citations refer to the 2016 edition of the Revised Statutes of Missouri, updated through the 2019 Cumulative Supplement.

2

a minor at the time. The Knights had taken Collin to the lake to spend time with them and with other relatives. While out on the lake, the Knights gave Collin permission to operate one of two Jet Skis to which the group had access. Before Collin entered the water to ride the Jet Ski, another member of the group, who was visibly intoxicated, was operating the other Jet Ski recklessly and erratically in the same area. While Collin was operating his own Jet Ski, his intoxicated relative struck Collin's Jet Ski from the rear. Collin was seriously injured in the accident.

Acting through his conservator, Collin filed suit against the Knights and others for his injuries in the Circuit Court of Boone County. His initial and first amended petitions asserted claims against the Knights and five other named defendants. Collin later dismissed his claims against the other five defendants. Collin's second amended petition, filed on August 7, 2018, asserted claims only against the Knights. The petition alleged that the Knights were negligent in supervising Collin, when they gave him permission to operate a Jet Ski after observing another person's reckless and erratic operation of another Jet Ski in the same area.

On August 28, 2018, the Knights submitted the Second Amended Petition to State Farm, who insured the Knights at the relevant time under a personal liability umbrella policy. On September 19, 2018, State Farm sent the Knights a letter in which it declined to defend or indemnify them under the policy. (State Farm had previously refused to provide a defense or indemnity to the Knights in connection with Collin's original and first amended petitions.) In its letter, State Farm quoted Exclusion 8 of the Knight's policy, which provided in relevant part:

There is no coverage under this policy for any:

. . . .

8.     **loss** arising out of:

. . . .

3

b.   the supervision of, or the failure to supervise, any person by any **insured**, with regard to the ownership, maintenance or use . . .

. . . .

of any **automobile**, **recreational motor vehicle**, watercraft, aircraft or any other motorized vehicle, unless **required underlying insurance** applies to the **loss** and provides coverage that pays for the **loss** in the amount shown as Minimum Underlying Limits on the declarations page.

The policy separately provided that "watercraft liability" insurance was only "required underlying insurance" "with respect to watercraft which are owned by or available for the regular and frequent use of any **insured**."

Following State Farm's refusal to defend or indemnify the Knights, Collin and the Knights entered into a "Settlement Agreement and Agreement to Limit Recovery to Certain Assets" in November 2018. The agreement did not itself resolve Collin's claims against the Knights. Instead, the parties agreed that, at Collin's discretion, his claims would be resolved by binding arbitration. The Knights agreed that, in the arbitration, they would not object to Collin's evidence, cross-examine his witnesses, or offer any evidence of their own. The Knights also agreed not to file any motions during the arbitration, not to oppose confirmation of any arbitration award in the circuit court or to seek to have the award vacated, and not to appeal any order or judgment entered by the circuit court. In return, Collin agreed to seek satisfaction of any arbitration award or judgment solely from State Farm or any other insurer which insured the Knights' liability, and from any recovery the Knights later obtained against State Farm or any other insurer for their failure to defend and indemnify the Knights against Collin's claims. The parties agreed that the Knights would pursue a claim for bad faith (and any other contractual or tort claims they might have) against State Farm based upon the insurer's failure to defend and indemnify the Knights, and would give Collin 75% of any amount that they recovered from State Farm in that action. The parties also

4

agreed that the Knights would notify State Farm of the agreement "no sooner than thirty days before judgment is entered in the Lawsuit."

On January 10, 2019, the parties proceeded to arbitration before Arbitrator Wally Bley. Both parties appeared with counsel. Collin called six witnesses and entered seventeen exhibits into evidence. Consistent with the settlement agreement, the Knights did not cross-examine any of Collin's witnesses, object to any of his evidence, or offer any evidence or argument of their own. On January 14, 2019, the Arbitrator issued his arbitration award, finding that Nelson Knight was negligent and awarding Collin $6 million in compensatory damages. The Arbitrator separately found that the evidence was "insufficient" to show "active negligence" by Violet Knight, and therefore found her not to be liable for Collin's injuries.

On January 23, 2019, the Knights notified State Farm by certified letter of the § 537.065 agreement. On February 21, 2019, State Farm filed a motion in the circuit court to intervene in the pending lawsuit pursuant to § 537.065.2. The next day, Collin filed a motion seeking to have the circuit court confirm the arbitration award.

The circuit court sustained State Farm's motion to intervene on February 25, 2019. On March 1, 2019, State Farm filed an answer to Collin's Second Amended Petition, as well as a motion to vacate the arbitration award and other procedural motions. On April 22, 2019, the circuit court entered its judgment confirming the arbitration award.[3]

---

[3] In its motion to vacate the arbitration award, State Farm argued (among other things) that § 537.065.2 gave it the "right to have this litigation tried to a jury," and that the arbitration award was procured by undue means because the § 537.065 agreement was entered "intentionally to circumvent State Farm's rights under Section 537.065.2 and to prevent the full and fair trial of this case to a jury." At the hearing on the motion to confirm the award, the scope of State Farm's rights under § 537.065.2 was extensively argued, and the court recognized that "the threshold thing here is whether 537.065.2 is complied with. If it's not, then we don't need to get to whether I'm going to even confirm the arbitration award." Although the circuit court's judgment does not expressly refer to State Farm's arguments concerning its rights as an intervenor under § 537.065.2, none of

5

State Farm appeals.

## Discussion

On appeal, State Farm asserts four separate Points. In its first two Points, it argues that confirmation of the arbitration award (which establishes Nelson Knight's liability and the amount of Collin Knight's damages) denies State Farm its constitutional rights to due process, to a jury trial, and to access the courts. In its final two Points, State Farm argues that the arbitration award should not have been confirmed, because it was procured through "undue means" within the meaning of § 435.405.1(1), and because there was no existing controversy between the Knights and Collin at the time of the arbitration.

## I.

Before reaching the merits of State Farm's arguments, we must address Collin's claim that State Farm does not have standing to appeal the circuit court's judgment, because it is not an "aggrieved party."[4] *See Underwood v. St. Joseph Bd. of Zoning Adjustment*, 368 S.W.3d 204, 212-13 (Mo. App. W.D. 2012) (noting that "[r]egardless of the merits of appellants' claims, without standing, the court cannot entertain the action" (citation and internal quotation marks omitted)).

In Missouri, the right to appeal a civil judgment exists only by statute. "An appeal lacking a statutory basis confers no authority upon an appellate court except to dismiss the appeal." *In Interest of A.N.L. v. Maries Cnty. Juvenile Office*, 484 S.W.3d 328, 332 (Mo. App. S.D. 2016) (citation omitted). Under § 512.020, "[a]ny party to a suit aggrieved by any judgment of any trial court in any civil cause" may

the parties disputes that the circuit court's confirmation of the arbitration award necessarily rejected the arguments State Farm now reasserts on appeal. We likewise presume that the circuit court's judgment rejected State Farm's expansive view of its rights under § 537.065.2, albeit *sub silentio*.

[4] Collin and the Knights have filed separate Respondent's Briefs in this Court. While their respective briefs are not identical, they largely make the same arguments. We attribute all of the respondents' arguments to Collin for clarity's sake.

appeal from a "[f]inal judgment in the case." § 512.020(5). To have a right to appeal under § 512.020, "the appealing party must be both a party to the action and 'aggrieved' by the particular judgment or order" which it seeks to challenge on appeal. *Stichler v. Jesiolowski*, 547 S.W.3d 789, 793-94 (Mo. App. W.D. 2018) (citations and internal quotation marks omitted).

Accordingly, it is not enough that State Farm was allowed to intervene and became a party to the action; rather, it must at the same time be aggrieved by the judgment it challenges. *Bi-State Dev. Agency of Missouri-Illinois Metro. Dist. v. Ames Realty Co.*, 258 S.W.3d 99, 104-05 (Mo. App. E.D. 2008) (a statutory right to intervene "is not synonymous with being an aggrieved party"); *Charnisky v. Chrismer*, 185 S.W.3d 699, 702-03 (Mo. App. E.D. 2006) (appellant-intervenor lacked standing to appeal the portion of a judgment that "resolve[d] issues solely between other parties and d[id] not resolve the claims made by that appellant").

In arguing that State Farm is not "aggrieved" by the judgment, Collin contends that State Farm will "neither gain[ ] nor lose[ ] from the direct operation of the judgment against Nelson [Knight]," and that State Farm was not a party to the arbitration proceeding, and therefore lacks standing to challenge the confirmation of the arbitration award.

Collin's standing arguments cannot survive the General Assembly's enactment of the current version of § 537.065 in 2017. In particular, new § 537.065.2 expressly provides that,

> [b]efore a judgment may be entered against any tort-feasor after such tort-feasor has entered into a contract under this section, the insurer or insurers shall be provided with written notice of the execution of the contract and shall have thirty days after receipt of such notice to intervene as a matter of right in any pending lawsuit involving the claim for damages.

Prior to the enactment of § 537.065.2 in 2017, Missouri courts had repeatedly held that a liability insurer which refused to defend its insured did not have the

7

right to intervene in an underlying tort action against the insured. As we explained in *Charles v. Consumers Insurance*, 371 S.W.3d 892 (Mo. App. W.D. 2012):

> In the third party liability claim context, the insurance carrier has no right to intervene in litigation between its policyholder and the third party; the carrier can participate in the litigation only pursuant to its contractual obligation to defend the policyholder. This is true because the insurance carrier has no direct interest in a lawsuit for damages filed against its policyholder by a third party. In such cases, if the insurer has a right to participate in the litigation, it is a contractual right, not a right based on Rule 52.12(a). Thus, if the carrier wrongfully denies coverage, it has breached its contractual obligation, and, in turn, the policyholder is relieved of his obligations under the contract. Therefore, the carrier can no longer participate in the litigation absent the policyholder's consent. Rule 52.12, setting out the requirements for intervention of right, is not available to restore an insurance carrier to control of the defense of a third party liability claim when the carrier forfeited control by denying coverage. Nor can the insurer's breach and the insured's settlement in reliance thereon, create an interest where one does not otherwise exist.

*Id.* at 897-98 (citations omitted). The single case cited by Collin to support his claim that State Farm's interests are not directly affected by the judgment – *Sherman v. Kaplan*, 522 S.W.3d 318, 326 (Mo. App. W.D. 2017) – applies this pre-2017, common-law principle.

By enacting new § 537.065.2, the General Assembly necessarily rejected the judge-made rule that liability insurance carriers lack any direct interest in tort litigation against their insureds, and therefore have no right to intervene in such litigation. Instead, where an insured has entered into an agreement pursuant to § 537.065, the new statute gives insurers the statutory right to intervene. The legislature presumably recognized that, where some or all of an insured's personal assets are protected from execution by a § 537.065 agreement, the insured may have little incentive to assert a vigorous defense to an injured party's claims, and may even be contractually prohibited from mounting a defense. By enacting § 537.065.2, the legislature has declared that, where the insured has entered into

8

an agreement limiting the assets against which a claimant may seek recovery, a liability insurance carrier has a sufficient interest in the determination of the insured's liability to support the insurer's intervention in the underlying litigation, as a matter of right.

In light of the enactment of § 537.065.2, courts may no longer deny a liability insurer intervention in an underlying tort action, on the basis that the insurer "has no direct interest in a lawsuit for damages filed against its policyholder by a third party." *Charles*, 371 S.W.3d at 897 (citation omitted). By the same token, it would be inconsistent with § 537.065.2 for courts to hold that a liability insurer, who meets the statute's conditions for intervention, lacks the right to appeal a judgment against the insured on the basis that the insurer is not "aggrieved" because the adverse judgment does not "'operate directly and prejudicially on [the insurer's] personal or property rights or interests.'" *Tupper v. City of St. Louis*, 468 S.W.3d 360, 375 (Mo. 2015) (citation omitted). Just as an insurer now has the right to intervene in the circuit court to defend claims against its insured, so too that insurer may appeal an adverse judgment entered following the insurer's intervention. The same statutorily-recognized interest which supports an insurer's intervention in the circuit court, likewise supports the insurer's right to prosecute an appeal where its arguments in the circuit court are unsuccessful.

## II.

We turn to State Farm's first two Points on appeal, which allege that confirmation of the arbitration award denied State Farm its constitutional rights to due process, to a jury trial, and to access the courts. Although framed as two separate Points invoking three separate constitutional rights, State Farm's first two Points boil down to a single contention: that when the General Assembly enacted § 537.065.2, and granted insurers the right to intervene in litigation against their insureds, it necessarily gave insurers the right *to contest the insured's liability, and*

9

*the claimant's damages, on the merits*, whatever the status of the litigation at the time of the insurer's intervention.[5]  We do not agree that the 2017 amendments to § 537.065 can be interpreted so expansively, and accordingly reject State Farm's constitutional arguments.[6]

## A.

As explained in § I, above, prior to 2017 Missouri courts repeatedly held that a liability insurer, which had refused to defend its insured without reservation, had no right to intervene in a tort action brought against its insured by an injured third party.  Instead, it was generally held that an insurer was entitled to participate in a third party's suit against an insured "only pursuant to its contractual obligation to defend the policyholder."  *Charles*, 371 S.W.3d at 897.

Since its original enactment in 1959, § 537.065 has permitted an injured party and a tort-feasor to agree that, if the injured party obtains a judgment against the tort-feasor, the injured party will seek to collect on the judgment only from "the specific assets listed in the contract," and from "any insurer which insures the legal liability of the tort-feasor."  § 537.065.1.  The General Assembly amended § 537.065 effective August 28, 2017.  As explained by the Missouri Supreme Court in *Desai v. Seneca Specialty Insurance Co.*, 581 S.W.3d 596 (Mo. 2019), the amended statute "allows for the same type of contracts as the 2016 statute."  *Id.* at 600.  "[T]he amended statute includes two noteworthy additions," however.  *Id.*

> First, the amended statute adds a prerequisite to the execution of a
> valid contract that did not previously exist.  Under the amended

---

[5]  In a similar vein, the Missouri Organization of Defense Lawyers, as *amicus curiae*, argues that "[t]he revised version of Section 537.065 now requires that insurance companies receive notice of an 065 agreement *with time to litigate the dispute*."  (Emphasis added.)

[6]  Collin argues, with some force, that State Farm failed to preserve some or all of its constitutional arguments in the circuit court.  Given our rejection of State Farm's interpretation of § 537.065.2 – which underlies each of its constitutional arguments – we need not resolve Collin's preservation arguments.

statute, a tortfeasor is able to enter into a contract only if the tortfeasor's insurer or indemnitor "had the opportunity to defend the tortfeasor without reservation but refuse[d] to do so." Section 537.065.1, RSMo Supp. 2017. Additionally, the amended statute added the requirement that insurers be given written notice and the opportunity to intervene prior to judgment. Section 537.065.2, RSMo Supp. 2017.

Section 537.065.2, an entirely new provision added in 2017, provides:

Before a judgment may be entered against any tort-feasor after such tort-feasor has entered into a contract under this section, the insurer or insurers shall be provided with written notice of the execution of the contract and shall have thirty days after receipt of such notice to intervene as a matter of right in any pending lawsuit involving the claim for damages.

State Farm argues that § 537.065.2 gives it the unconditional right to contest liability and damages on the merits. But the statute does not say that. Instead, it is far more limited. Section 537.065.2 merely requires that insurers be provided with notice of an agreement entered under § 537.065 "[b]efore a judgment may be entered," and that insurers have the opportunity to intervene in "any pending lawsuit" for thirty days thereafter. The statute does not specify a time limit within which an insurer must be notified of a § 537.065 agreement – other than that such notice be provided before the entry of judgment. The statute does not require that the insurer must receive notice, and an opportunity to intervene, before the insured's liability or damages are determined – it only requires that notice be provided "before a judgment may be entered."[7] The statute does not require that a

---

[7] In *Britt v. Otto*, 577 S.W.3d 133 (Mo. App. W.D. 2019), this Court stated in *dictum* that "there is little doubt that the General Assembly intended section 537.065.2 to afford insurers a temporally limited right to intervene as a matter of right in third party tort actions **before** liability and damages have been determined." *Id.* at 141 n.7 As explained in the text, however, the statute does not say that – it merely requires that an insurer be given notice, and an opportunity to intervene, "before a judgment may be entered."

The issuance of an arbitration award does not constitute the entry of the "judgment" referenced in § 537.065.2. Caselaw establishes that

11

lawsuit be pending at the time that an insurer receives notice of a § 537.065 agreement. Nor does the statute require that litigation between an injured party and the insured be stayed after execution of an agreement, or after notice to an insurer, until the insurer is permitted to intervene, or until its right to intervene expires.

We also note that it was open to the General Assembly to state explicitly what State Farm now claims that it intended: that an intervening insurer would in all instances have the right to defend the insured's liability and damages on the merits, regardless of the progress of the litigation against the insured at the time of intervention. Or, the legislature could simply have declared that no judgment entered against an insured following execution of a § 537.065 agreement would be binding on an insurer. Of course, the General Assembly could also have repealed § 537.065 outright. Yet it chose none of those paths. Instead, the legislature simply gave insurers the right to intervene – nothing more.

In amending § 537.065, the General Assembly plainly intended to address the scenario which played out innumerable times under the pre-2017 version of the statute, in which: an injured party and an insured/tort-feasor enter an agreement which eliminates the insured's personal liability exposure; they then continue to litigate the injured party's claim in circumstances in which the insured may have

---

a judgment is a legally enforceable judicial order that fully resolves at least one claim in a lawsuit and establishes all the rights and liabilities of the parties with respect to that claim. . . .

Judgements are a subset of orders generally. As a result, a judgment must be in writing. In addition . . . a judgment must be denominated "judgment" and signed by the judge[.] . . . [A] judgment is "entered" when the writing denominated a judgment is signed by the judge and filed.

*State ex rel. Malin v. Joyce*, 584 S.W.3d 791, 793 (Mo. App. W.D. 2019) (citations and internal quotation marks omitted). The Missouri Uniform Arbitration Act plainly distinguishes between an "award" issued by an arbitrator, § 435.385, and the "judgment or decree" or "order" issued by a court confirming an award, § 435.415, § 435.440(3), or the court "order" vacating an award. § 435.440(5).

12

little incentive to vigorously defend, and might even be contractually prohibited from doing so; the injured party obtains a substantial money judgment against the insured; and the injured party then seeks to bind the insured's liability insurer to the outcome of the litigation, even though the insurer did not participate in, and might even have been unaware of, that litigation. In amending the statute in 2017, it may be (as the dissent argues) that individual legislators intended to guarantee insurers an absolute right to contest the insured's liability, and the injured party's damages, on the merits, no matter what proceedings had taken place between the injured party and the insured prior to the insurer's intervention. But even if those were the intentions of the General Assembly as a body (which we have no way of confidently knowing), those intentions were not enacted into law. We can only implement the statute the General Assembly actually enacted. That statute only gave insurers two specific, limited rights: (1) the right to decide whether to defend the insured in the underlying litigation, prior to the insured's entry into a § 537.065 agreement; and (2) the right to intervene in "any pending lawsuit" within thirty days of receiving notice of a § 537.065 agreement.

By arguing that it has an absolute right to litigate Nelson Knight's liability on the merits, State Farm asks us to read provisions into § 537.065.2 which the legislature did not itself include in the statute. But the Missouri Supreme Court has repeatedly instructed that we "'must be guided by what [our] legislature said, not by what the Court thinks it meant to say." *Gash v. Lafayette Cnty.*, 245 S.W.3d 229, 233 (Mo. 2008) (quoting *Metro Auto Auction v. Dir. of Revenue*, 707 S.W.2d 397, 401 (Mo. 1986)). We "cannot supply that which the legislature has, either deliberately, or inadvertently, or through lack of foresight, omitted from the controlling statutes." *State ex rel. Mercantile Nat. Bank at Dallas v. Rooney*, 402 S.W.2d 354, 362 (Mo. 1966). "In statutory construction, courts must give effect to the statute as written and cannot add provisions which do not appear either

13

explicitly or by implication." *Garza v. Valley Crest Landscape Maintenance, Inc.*, 224 S.W.3d 61, 64 (Mo. App. E.D. 2007) (citation omitted).

We have recognized the limited nature of the right of intervention afforded by § 537.065.2 in two prior decisions. In *Britt v. Otto*, 577 S.W.3d 133 (Mo. App. W.D. 2019), we held that an insurer's rights under § 537.065.2 were not violated where an insured gave the insurer notice of a § 537.065 agreement at a time when no litigation was pending against the insured. We held that the insurer's statutory right to intervene had expired by the time litigation against the insured was commenced more than thirty days after the notice. *Id.* at 140.

Similarly, in *Aguilar v. GEICO Casualty Co.*, 588 S.W.3d 195 (Mo. App. W.D. 2019), we held that an insurer's rights under § 537.065.2 were not violated where the insurer was given notice of an agreement while litigation was pending against the insured; the insurer timely moved to intervene in that litigation; the litigation was then voluntarily dismissed by the injured party; and a new lawsuit was then filed more than thirty days thereafter. Although the insurer in *Aguilar* contended that § 537.065.2 gave it a right to intervene in the re-filed action, we disagreed:

> The plain and unambiguous meaning of the statute requires that a tortfeasor and injured party *give notice* to the insurer of a section 537.065 contract before a judgment may be entered, not that the insurer must be allowed to intervene before judgment may be entered. Any other interpretation ignores and renders superfluous the latter part of subsection two which requires that the insurer file its motion to intervene in a pending lawsuit thirty days after receipt of such notice.
>
> . . . [H]aving a statutory **opportunity** to intervene as a matter of right is not the same as an unconditional right to intervene before a judgment is entered. The time limitation must be complied with, and a lawsuit involving the claim must be pending.

*Id.* at 198 & n. 7.

State Farm was afforded the rights granted by § 537.065.2. It was notified of the § 537.065 agreement before the entry of judgment (and notably, it does not

14

argue that the notice the Knights provided was itself untimely).  State Farm was given thirty days to intervene, and its timely motion to intervene was in fact granted by the circuit court.  Section 537.065.2 required nothing more.

"The revisions to section 537.065 simply give an insurer the right to written notice and an opportunity to intervene"; those revisions do not give an insurer "any other rights beyond what any intervenor would have."  *Desai*, 581 S.W.3d at 606-07 (Stith, J., dissenting).[8]  We recognize that, after being allowed to intervene, State Farm became a "party" to the lawsuit with the same rights of any other party.  *See, e.g., City of St. Joseph v. Hankinson*, 312 S.W.2d 4, 7 (Mo. 1958) ("Upon being permitted to intervene, [intervenor] became a defendant . . . entitled to raise any legitimate defenses which came within the general scope of the original suit, and which the original defendants might have raised."); *Martin v. Busch*, 360 S.W.3d 854, 858 (Mo. App. E.D. 2011) ("Upon intervention, the rights and responsibilities of [Intervenor] will be the same as any other party to the litigation." (citation omitted)).  But it is well established that "'an intervenor must accept the action pending *as he finds it at the time of intervention.*'"  *Martin*, 360 S.W.3d at 858 n.5 (quoting *Beard v. Jackson*, 502 S.W.2d 416, 419 (Mo. App. 1973)).

In essence, State Farm contends that when § 537.065.2 gave it an opportunity to intervene before judgment was entered against the Knights, it should be afforded *greater* rights than the Knights themselves had at the time of State Farm's intervention.  By the time State Farm intervened, the Knights had

---

[8]     Judge Stith' dissenting opinion in *Desai* argued that an insurer – which had sought to intervene following entry of judgment against its insured – should have an opportunity to argue that its motion to intervene was timely, and that the judgment should be set aside under Rule 74.06(b) because of the insured's failure to comply with the notice requirements of § 537.065.2.  581 S.W.3d at 607-08.  Thus, contrary to the dissent's characterization (at 6 n.1), Judge Stith's dissent in *Desai* recognized that "the insurer's rights would be necessarily limited by the timing of their intervention," and by the procedural posture of the case at that time.  Judge Stith did <u>not</u> suggest that the insurer could simply set up a defense to the underlying action, ignoring the fact that judgment had been entered prior to its intervention.

15

entered into a valid agreement to reduce their own financial exposure by limiting Collin's recovery to their insurance. As part of that agreement, they had agreed to arbitration of Collin's claims, and such an arbitration had in fact occurred. By the time of State Farm's intervention, Nelson Knight no longer had the right to contest his liability to Collin, or the amount of Collin's damages. State Farm points to nothing in new § 537.065.2 which would give it *broader* rights than those possessed by its insured, or than any other intervenor would possess.

**B.**

In cases involving uninsured or underinsured motorist insurance coverage, an insurer is permitted to intervene when its insured sues the uninsured or underinsured motorist, to contest the uninsured or underinsured driver's liability, or the extent of the insured's damages. *See Charles v. Consumers Ins.*, 371 S.W.3d 892, 898 (Mo. App. W.D. 2012). In the context of uninsured or underinsured motorist coverage, the intervening insurer is generally entitled to assert defenses to its insured's claims, even though the uninsured or underinsured motorist may have defaulted in the action.[9]

Thus, in the uninsured or underinsured motorist context, insurers are permitted to intervene to assert defenses which the party they seek to represent has failed to assert on their own behalf. But the uninsured motorist cases are distinguishable from the situation here. First, in those cases, at the time of the insurer's intervention, the third-party was merely "in default" for having failed to file a timely answer,[10] or had been the subject of an interlocutory "default and

---

[9] *See, e.g., Julian v. Auto. Club Inter-Ins. Exch.*, 728 S.W.2d 321, 322 (Mo. App. E.D. 1987); *Potts v. Penco, Inc.*, 708 S.W.2d 222, 225 (Mo. App. E.D. 1986) (*dictum*); *Beard v. Jackson*, 502 S.W.2d 416, 419 (Mo. App. 1973); *State ex rel. State Farm Mut. Auto. Ins. Co. v. Craig*, 364 S.W.2d 343, 346 (Mo. App. 1963).

[10] *Julian*, 728 S.W.2d at 321; *Craig*, 364 S.W.2d at 345.

16

inquiry" order.[11]  Even where a "default and inquiry" order had been entered, however, under the version of Rule 74.045 in effect at the time, the circuit court had discretion to set aside the order for "good cause."  *State ex rel. Aubuchon v. Jones*, 389 S.W.2d 854, 859 (Mo. App. 1965).  Thus, at the time of intervention, the party whose interests the insurer sought to represent was not foreclosed from defending the action on the merits.  As we explain in § III below, an arbitration award can be set aside only on far narrower grounds than an interlocutory default order, and is binding on the insured in a way in which an interlocutory default judgment simply is not.

Unlike the case with defaulting uninsured or underinsured motorists, this is *not* a case in which the insured has remained completely passive.  Despite State Farm's failure to defend them, the Knights answered Collin's original and second amended petitions, and responded to and propounded written discovery.  The Knights then chose to enter into a § 537.065 agreement – as they were entitled to do – which protected their non-insurance assets from execution, and which subjected Collin's claims to binding arbitration.  Unlike in the uninsured/underinsured motorist context, in this case the insureds' liability, and the injured party's damages, had been determined on the merits in the arbitration proceeding, before State Farm's intervention.  In that arbitration proceeding, the arbitrator sustained Collin's claim against Nelson Knight, but found his claim against Violet Knight to be unproven.  This is not a case in which claims for which the insurer might ultimately be responsible were simply deemed admitted, based on the complete inaction of the purportedly liable party.

Moreover, there is a critical distinction between the liability insurance at issue in this case, and uninsured and underinsured motorist coverage.  Uninsured

---

[11]       *Potts*, 708 S.W.2d at 224; *Beard*, 502 S.W.2d at 417.

17

motorist insurance is first-party insurance coverage, which insures the insured against losses which the insured suffers directly, as a result of negligent acts of an uninsured or underinsured third party. *Charles*, 371 S.W.3d at 897; *Shafer v. Auto. Club Inter-Ins. Exch.*, 778 S.W.2d 395, 398 (Mo. App. S.D. 1989). Because an insurer directly insures the insured for losses which the insured experiences at the hands of a third party with whom the insurer has no relationship, Missouri courts have long recognized that an insurer's interests are directly affected by the insured's assertion of a claim against the third party. The insurer must accordingly be permitted to intervene in the insured's action against the third party, as its only means to protect its own independent interests.

The situation is fundamentally different with respect to third-party liability insurance. In this context, an insurer has a contractual relationship with its insured, the party claimed to be liable for a third party's injuries. Under that contract, the insured has an obligation to provide timely notice to its insurer, to cooperate with its insurer, and to permit the insurer to assume the defense of the action against the insured. The primary means by which a liability insurer "can participate in the litigation" against its insured is "pursuant to its contractual obligation to defend the policyholder." *Charles*, 371 S.W.3d at 897. Under the current version of § 537.065.1, an insured may only enter an agreement with the injured party to limit the assets against which the injured party will seek to recover, _after_ the insurer has been given the opportunity to assume the defense of the action, but declined to do so.

Missouri courts have repeatedly recognized that, where an insurer has refused to defend its insured, the insured is fully justified in seeking to protect its own interests by whatever means it deems appropriate – including by entering a § 537.065 agreement.

18

> Once an insurer unjustifiably refuses to defend or provide coverage, the insured may, without the insurer's consent, enter an agreement with the plaintiff to limit its liability to its insurance policies. *Cf. Rinehart v. Anderson*, 985 S.W.2d 363, 371 (Mo.App.1998) (recognizing that once an insurer unjustifiably refuses to defend or provide coverage, the insured is free to enter a settlement that releases it from liability). "[The insurer] cannot have its cake and eat it too by both refusing coverage and at the same time continuing to control the terms of settlement in defense of an action it had refused to defend." *Id.*

*Schmitz v. Great Am. Assur. Co.*, 337 S.W.3d 700, 710 (Mo. 2011).

Therefore – and unlike litigation involving an uninsured or underinsured driver – a liability insurer's right of intervention under § 537.065.2 will only ever arise, *after* the insurer has refused to avail itself of its contractual right to defend the action, and the insured has been left to its own devices to defend its interests. An insurer intervening in an uninsured/underinsured motorist case has no similar, prior opportunity to control the litigation – its *first* (and *only*) opportunity to participate occurs through intervention. In the context of liability insurance, it would be unwarranted to permit an insurer who has intervened under § 537.065.2, after having been given an earlier opportunity to defend its insured, to ignore or "unwind" everything that has transpired in the litigation prior to the insurer's intervention. Adopting State Farm's expansive interpretation of § 537.065.2 would allow an insurer to "have its cake and eat it too," by refusing to honor its insurance contract and provide the insured with an unqualified defense, and yet retain all of the rights it would have had if it had provided such a defense. As we have explained in § II.A, above, nothing in the text of § 537.065.2 purports to grant an insurer such a "do-over." *See Aguilar*, 588 S.W.3d at 202 (in action governed by the current version of § 537.065, holding that a third-party liability insurer "waived the right to contest the cause of the accident or the extent of [the third party]'s injuries

19

and damages by choosing not to defend [its insured] without reservation and disclaiming any liability under . . . [its] policy").[12]

It is noteworthy that neither State Farm, nor its *amicus* the Missouri Organization of Defense Lawyers, argues that State Farm's position is supported by the caselaw which allows an intervening uninsured motorist insurer to assert merits defenses after a default by the tort-feasor. The fact that neither State Farm nor its *amicus* cite to this caselaw suggests that they recognize that third-party liability insurers which have refused to defend their insureds (like State Farm) are in a fundamentally different posture than uninsured motorist carriers.[13]

---

[12] Indeed, in addressing the scope of an uninsured motorist insurer's rights upon intervention in underlying tort litigation, this Court distinguished uninsured motorist coverage from third-party liability insurance like that at issue here:

> In considering this question, we must endeavor to determine what kind of insurance is involved. The terms of the insurance contract bind State Farm to pay all sums which the insured 'shall be legally entitled to recover' from the uninsured motorist. *The character of this coverage must be separated from the regular and customary liability insurance.* The petitioner is not the insurer of the uninsured motorist. Neither, on the facts in this case, is it called upon to defend the insured against the claim made by the opposing party.

*Craig*, 364 S.W.2d at 346 (emphasis added).

[13] In addition to relying on the cases involving uninsured motorist coverage, the dissenting opinion also argues that State Farm's right to contest the merits is supported by the Eastern District's decision in *Martin v. Busch*, 360 S.W.3d 854 (Mo. App. E.D. 2011), a wrongful death case. *Martin* merely held, however, that certain persons entitled to prosecute a wrongful-death action should be permitted to intervene in an action brought by another beneficiary, before a settlement of the wrongful-death action was approved by the court. Although *Martin* did not say so explicitly, it appears that, upon their intervention, the intervenors would be permitted to object to court approval of the settlement reached by the other beneficiary. *Martin* does <u>not</u> suggest, as the dissent contends, that the intervenors "did not have to accept the settlement but had every right . . . to assert their own 'affirmative cause or defense' appropriate to the case." Dissent at 11. Section 537.080.2 specifies that, although there may be multiple persons entitled to prosecute a wrongful death action on behalf of a particular decedent, "[o]nly one action may be brought under this section against any one defendant for the death of any one person." And § 537.095.1 provides that, "if two or more persons are entitled to sue for and recover damages as herein allowed, then any one or more of them may compromise or settle the claim for damages with approval of any circuit court." Under these provisions, a settlement by one wrongful-death beneficiary bars another beneficiary from later bringing a separate wrongful-death action, unless the second beneficiary obtains relief from the judgment

20

## C.

What we have said above disposes of the constitutional claims State Farm asserts in its first two Points on appeal. At the time it intervened, Collin had filed a motion to confirm the arbitration award. The scope of the issues which could be considered in connection with such a motion is limited:

> Pursuant to section 435.400, upon application of a party to an arbitration proceeding, "the court **shall confirm an award**, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award . . . ." The authorized grounds for vacating an award are limited, and do not include re-litigating the facts or legal issues determined by the award.

*Britt*, 577 S.W.3d at 144 (emphasis added by *Britt*; footnote omitted); *see also, e.g.*, *Cargill, Inc. v. Poeppelmeyer*, 328 S.W.3d 774, 776 (Mo. App. S.D. 2010); *Parks v. MBNA Am. Bank*, 204 S.W.3d 305, 310 (Mo. App. W.D. 2006).

Under § 537.065.2, State Farm had only the rights of any intervenor in a lawsuit; it was not given an unconditional right to litigate the injured party's claims on the merits. State Farm was required to "take the action as it found it" at the time of its intervention. (We once again emphasize that State Farm makes no argument that it should have been provided with notice, and given an opportunity to intervene, at an earlier time.) At the time of State Farm's intervention, the only pending question in the litigation was whether the arbitration award should be confirmed, or whether it was instead subject to vacation. At that time, it was not open to State Farm to seek to relitigate the Knights' liability to Collin, or the amount of his recoverable damages. The circuit court's confirmation of the arbitration award did not violate State Farm's rights to due process, a jury trial, or to access the courts.

Points I and II are denied.

---

approving the settlement. *See Davis v. Wilson*, 804 S.W.2d 392 (Mo. App. W.D. 1991). Nothing in *Martin* purports to alter these established principles.

## III.

In its third and fourth Points, State Farm challenges the merits of the circuit court's judgment confirming the arbitration award. In its third Point, State Farm argues that the arbitration award was procured by "undue means," and was therefore subject to vacation under § 435.405.1(1). In its fourth Point, State Farm argues that the arbitration award should have been vacated because there was no existing controversy between Collin and the Knights at the time of the arbitration; instead, State Farm contends that the § 537.065 agreement aligned the interests of Collin and the Knights, such that "there was in effect a joint venture between them."

Section 435.405.1(1) provides that, "[u]pon application of a party, the court shall vacate an award where . . . [t]he award was procured by corruption, fraud or other undue means . . . ." In *National Avenue Build Co. v. Stewart*, 910 S.W.2d 334 (Mo. App. S.D. 1995), the Southern District held that

> "*[U]ndue means* . . . means something akin to fraud and corruption. 'Undue means' goes beyond the mere inappropriate or inadequate nature of the evidence and refers to some aspect of the arbitrator's decision or decisionmaking process which was obtained in some manner which was unfair and beyond the normal process contemplated by the arbitration act.

*Id.* at 345 (quoting *Ark. Dep't of Parks & Tourism v. Resort Mgrs., Inc.*, 743 S.W.2d 389, 391 (Ark. 1988)). "Undue means" "connotes 'some type of bad faith in the procurement of the award.'" *Id.* (quoting *Shearson Hayden Stone, Inc. v. Liang*, 493 F. Supp. 104, 108 (N.D. Ill. 1980), *aff'd*, 653 F.2d 310 (7th Cir. 1981)).

The problem with State Farm's "undue means" argument is that the party whose interests it seeks to assert – Nelson Knight – himself agreed to the very procedures which State Farm now argues were fatally improper. A party may not seek to vacate an arbitration award, on the basis that it was procured by "undue means," based on procedures to which it consented, and in which it voluntarily

22

participated without objection.  Indeed, caselaw holds that a party may not seek to vacate an arbitration award on the basis of "undue means," if it was aware of the circumstances constituting the allegedly "undue means" during the arbitration proceeding, and failed to object to them at that time.  *See MBNA Am. Bank, N.A. v. Hart*, 710 N.W.2d 125, 129 (N.D. 2006) (collecting cases); *Ark. Dep't of Parks & Tourism v. Resort Mgrs., Inc.*, 743 S.W.2d 389, 392 (Ark. 1988).  Obviously, Nelson Knight was aware of the procedures to which State Farm now objects during the arbitration proceeding, and raised no objection to those procedures.  State Farm cannot establish that the arbitration award was procured by "undue means" in these circumstances.

More fundamentally, State Farm's arguments that the arbitration award was procured by "undue means," or in the absence of any real adversity of interests between the parties, runs headlong into the Missouri caselaw which has specifically held that judgments entered under similar procedures, following the entry of a § 537.065 agreement, are entitled to deference, and cannot be attacked for unreasonableness.  Thus, in *Schmitz v. Great American Assurance Co.*, 337 S.W.3d 700 (Mo. 2011), an insured entered a § 537.065 agreement with the parents of an injured minor, in which the parties agreed that the minor's personal-injury claims against the insured would be decided in a bench trial.  At that trial, the insured "neither objected to the entry of evidence nor offered any defense."  *Id.* at 704.

The Missouri Supreme Court rejected the insurer's argument that the results of the bench trial were entitled to no deference, but that the insurer could instead challenge the results of that proceeding when the injured party later sought coverage from the insurer.

> The award of damages in this case was a judgment entered after a
> bench trial, yet Great American argues that this "trial" lacked any
> semblance of an adversarial proceeding because CPB[, the insured,]
> did not present a defense.  What Great American ignores is that it had

23

an opportunity to present a defense but declined to do so. CPB entered into a section 537.065 agreement to limit its exposure to liability. The agreement did not admit liability or damages; instead, it simply limited the collection of any judgment against CPB to the insurance policies.

The structure of the section 537.065 agreement actually gave Great American more protection than a settlement that admitted liability and determined damages. The parents still had the burden to prove liability and damages in a bench trial. Although the trial court found CPB liable and awarded the parents $4,580,076 in damages, it could have found that CPB was not liable or that no damages were suffered.

*Id.* at 709.

We cannot find that the arbitration proceeding in this case employed methods akin to fraud, or that it was so lacking in adversity that the award was rendered void, when the Missouri Supreme Court has held that the results of a bench trial conducted under similar procedures was presumptively reasonable, and could not later be challenged on the merits by a liability insurer. *See Aguilar*, 588 S.W.3d at 202 (rejecting third-party liability insurer's claim that arbitration award was procured by "undue means" and "'has been manufactured solely for purposes of enhancing the damages to be alleged in a subsequent "bad faith" claim against [the insurer]'"; "The actions that the parties took in entering a section 537.065 agreement and an agreement to submit their dispute to arbitration are authorized by statute.").

Points III and IV are denied.[14]

---

[14] At various points in its briefing, State Farm contends that, in the circumstances of this case, it cannot be bound by the results of the arbitration proceeding. That issue is not properly raised in response to Collin's motion to confirm the arbitration award. Instead, State Farm may raise that issue in any proceeding in which Collin or the Knights seek to collect on the judgment from State Farm. *See Aguilar*, 588 S.W.3d at 201; *Britt*, 577 S.W.3d at 15 & n.11.

24

## Conclusion

The judgment of the circuit court is affirmed.

_____
Alok Ahuja, Judge

Judge Hardwick concurs.
Judge Chapman dissents in separate opinion.


| | | |
|---|---|---|
| COLLIN KNIGHT, A MINOR, | ) | |
| BY AND THROUGH HIS NEXT FRIEND, | ) | |
| PAUL KNIGHT, | ) | |
| RESPONDENT, | ) | WD82860 |
| V. | ) | |
| | ) | FILED: JULY 14, 2020 |
| NELSON KNIGHT AND | ) | |
| VIOLET KNIGHT, | ) | |
| RESPONDENTS, | ) | |
| | ) | |
| STATE FARM FIRE AND CASUALTY | ) | |
| COMPANY, | ) | |
| Appellant. | ) | |
| | ) | |

## DISSENTING OPINION

I respectfully dissent. I would reverse the circuit court's judgment confirming the arbitration award, and remand the matter to the trial court, allow State Farm to conduct its discovery, and allow it to contest liability and damages. As an intervenor of right under amended section 537.065.2, State Farm had the right to protect its own interests in the suit, as that right of intervention was not derived solely from its contractual relationship with its insureds (Nelson and Violet Knight). By enacting the amendments to section 537.065.2, the legislature allowed, under certain conditions, the insurer the right to reject its obligation to defend and

indemnify, to be notified of its insured's section 537.065 agreement, and to then intervene in any pending action involving the claim for damages. In previous decisions we have noted that the legislature set very limited circumstances in which the right to intervene may be asserted by the insurer, but we have not indicated that the narrow path to intervention limits the scope of its rights upon intervention. Indeed, in *Britt v. Otto*, 577 S.W.3d 133, 141 n.7 (Mo. App. W.D. 2019), we recognized that "there is little doubt that the General Assembly intended section 537.065.2 to afford insurers a temporally limited right to intervene as a matter of right in third party tort actions ***before*** liability and damages have been determined." State Farm's interests are distinct from those of its insured and its right to assert them are no longer solely dependent on recognizing its obligation to defend and insure (without reservation of rights). In fact, the right of intervention under amended section 537.065.2 is conditioned upon the insurer having rejected its obligation to insure, and having been notified of the insured's execution of a section 537.065 agreement limiting the insured's exposure – thus potentially leaving the insurer as the only party in the suit that actually *has* an interest in limiting liability and damages.

Section 537.065 now provides as follows:

*1.* Any person having an unliquidated claim for damages against a tort-feasor, on account of ***personal injuries,*** bodily injuries*,* or death***, provided that, such tort-feasor's insurer or indemnitor has the opportunity to defend the tort-feasor without reservation but refuses to do so***, may enter into a contract with such tort-feasor or any insurer on his or her behalf or both, whereby, in consideration of the payment of a specified amount, the person asserting the claim agrees that in the event of a judgment against the tort-feasor, neither such person nor any other person, firm, or corporation claiming by or through him or her will levy execution, by garnishment or as otherwise provided by law, except against the specific assets listed in the contract and except against any insurer which insures the legal liability of the tort-feasor for such damage and which insurer is not excepted from execution, garnishment or other legal procedure by such contract. Execution or garnishment proceedings in aid thereof shall lie only as to assets of the tort-feasor specifically mentioned in the contract or the insurer or insurers not excluded in such contract. Such contract, when properly acknowledged by the parties thereto, may be recorded in the office of the recorder of deeds in any county where a judgment may be rendered, or in the county of the residence of the

2

tort-feasor, or in both such counties, and if the same is so recorded then such tort-feasor's property, except as to the assets specifically listed in the contract, shall not be subject to any judgment lien as the result of any judgment rendered against the tort-feasor, arising out of the transaction for which the contract is entered into.

***2. Before a judgment may be entered against any tort-feasor after such tort-feasor has entered into a contract under this section, the insurer or insurers shall be provided with written notice of the execution of the contract and shall have thirty days after receipt of such notice to intervene as a matter of right in any pending lawsuit involving the claim for damages.***

3. The provisions of this section shall apply to any covenant not to execute or any contract to limit recovery to specified assets, regardless of whether it is referred to as a contract under this section.

4. Nothing in this section shall be construed to prohibit an insured from bringing a separate action asserting that the insurer acted in bad faith.

(The pertinent 2017 amendments are emphasized.)

In interpreting a statute, the appellate court is guided by the legislature's intent, as indicated by the plain language of the statute. *Desai v. Seneca Specialty Ins. Co.*, 581 S.W.3d 596, 601 (Mo. banc 2019). "This [c]ourt must give meaning to every word or phrase in the statute if possible." *Id.*

In construing statutes to ascertain legislative intent it is presumed the legislature is aware of the interpretation of existing statutes placed upon them by the state appellate courts, and that in amending a statute or in enacting a new one on the same subject, it is ordinarily the intent of the legislature to effect some change in the existing law. If this were not so the legislature would be accomplishing nothing, and legislatures are not presumed to have intended a useless act.

*Kilbane v. Dir. of Dep't of Revenue*, 544 S.W.2d 9, 11 (Mo. banc 1976) (internal quotes and citation omitted). Thus, when the legislature amends a statute, the amendment is presumed to change the meaning of the law. *State ex rel. Coleman v. Wexler Horn*, 568 S.W.3d 14, 21 (Mo. banc 2019).

Interpreting the 2017 amendments to section 537.065, the *Desai* court observed:

[T]he amended statute includes two noteworthy additions. First, the amended statute adds a prerequisite to the execution of a valid contract that did not previously exist. Under the amended statute, a tortfeasor is able to enter into a

3

contract only if the tortfeasor's insurer or indemnitor "had the opportunity to defendant the tortfeasor without reservation but refuse[d] to do so." Section 537.065.1. RSMo Supp. 2017. Additionally, the amended statute added the requirement that insurers be given written notice and the opportunity to intervene prior to judgment. Section 537.065.2. RSMo Supp. 2017.

*Desai*, 581 S.W.3d at 600.

In *Desai,* the section 537.065 contract was executed by the plaintiff and tortfeasor/insured (and the case was heard to determine liability and damages) before the effective date of the 2017 amendments to section 537.065. *Id.* at 597-98. In declining to retroactively apply the 2017 version of section 537.065, the *Desai* court observed that, due to newly imposed requirements, the amendments referred to in "this [2017] section" did not refer to the statute's prior version:

> While the amended [2017] statute retained much of the 2016 statute's language, the amended statute's added requirements pertain to the meaning of its phrase, "has entered into a contract under this section." Under the 2016 statute, a contract could be created and cases could conclude without any insurer involvement. Indeed, under the 2016 statute it was not required for the insurer to be told the case existed. Conversely, under the amended statute, before a contract can be executed, insurers must have the opportunity to defend the tortfeasor and refuse to do so. In addition, prior to judgment, insurers must be provided with written notice and the opportunity to intervene.

*Id.* at 601.

The 2017 amendments to section 537.065 permit the same type of contracts as its predecessor. *Id.* at 600. Once an insurer refuses to defend or provide coverage, section 537.065.1 provides that the insured may enter into an agreement with the plaintiff to limit his or her liability to the insurance policy limits. § 537.065.1. But the amended statute differs substantively from the previous version in two ways. *Desai*, 581 S.W.3d at 600. First, the amended statute adds a prerequisite to the execution of a valid 537.065 agreement—a tortfeasor may enter into a contract only if the tortfeasor's insurer or indemnitor had the opportunity to defend the tortfeasor without reservation but refused to do so. *Id.*; § 537.065.1. Secondly, the

4

amended statute adds the requirement that insurers be given written notice and the opportunity to intervene prior to judgment. *Desai*, 581 S.W.3d at 600; § 537.065.2.

Before the amendment of section 537.065, "a contract could be created and cases could conclude without any insurer involvement." *Desai*, 581 S.W.3d at 601. In granting the right to intervene in a case where the plaintiff and insured have agreed to limit the insured's liability to insurance proceeds, the legislature recognized that the insurer's interests are no longer aligned with its policyholder's interests.

The majority opinion likewise acknowledges that, in amending section 537.065, the legislature granted the liability insurer the independent right to intervene, and that its interests are distinct from its insured tortfeasor:

> By enacting new § 537.065.2, the General Assembly necessarily rejected the judge-made rule that liability insurance carriers have no right to intervene in underlying tort litigation against their insureds. Instead, where an insured has entered into an agreement pursuant to § 537.065, the new statute gives insurers the statutory right to intervene. The legislature presumably recognized that, where some or all of an insured's personal assets are protected from execution by a § 537.065 agreement, the insured may have little incentive to assert a vigorous defense to an injured party's claims, and may even be contractually prohibited from mounting a defense. By enacting § 537.065.2, the legislature has declared that, where the insured has entered into an agreement limiting the assets against which a claimant may seek recovery, a liability insurance carrier has a sufficient interest in the determination of the insured's liability to support the insurer's intervention in the underlying litigation, as a matter of right.

Majority at *9. However, the majority opinion then indicates that, because of the timing of State Farm's intervention in the lawsuit, it cannot expect to challenge the arbitrator's determination of liability and damages in the instant action. The majority acknowledges that, as an intervening defendant in the lawsuit, State Farm had the same rights of any other party and was thus entitled to raise any legitimate defenses which the original defendants might have raised. *Martin v. Busch*, 360 S.W.3d 854, 858 (Mo. App. E.D. 2011). However, the majority nevertheless posits

5

that, because the instant action was for confirmation of an award (that had already determined liability and damages), and (citing Judge Stith's dissent in *Desai*) that because "an intervenor must accept the action pending as he finds it at the time of intervention," State Farm could not turn back the clock and challenge liability and damages in the context of this lawsuit. *But see id.* at 858 n. 5 (citing *Beard v. Jackson*, 502 S.W.2d 416, 419 (Mo. App. 1973)), and *Desai*, 581 S.W.3d at 607-08 (Stith, J., dissenting).[1]

The majority suggests that, because the legislature did not explicitly spell out that an intervening insurer could contest liability and damages when asserting its newly enacted right to intervene, it must not have intended to allow it the opportunity to do so. The majority seems to

---

[1] In her dissenting opinion in *Desai*, Judge Stith asserted that the amendment to section 537.065.2, which allowed intervention within 30 days of notice to the insurer, actually would have applied, as that portion of the statute referred to obligations imposed before entry of the judgment (which had not yet occurred prior to the effective date of the amendments). *Desai*, 581 S.W.3d at 606. Judge Stith went on to assert that the cause should be remanded to determine whether proper notice had been afforded the insurer, and whether sufficient grounds were shown to set aside the judgment. In a portion of her opinion Judge Stith indicated:

> The revisions to section 537.065 do not purport to give an insurer an automatic right to set aside a judgment entered or any other rights beyond what any intervenor would have. As a party seeking intervention as of right after judgment had been entered, [Insurer] had a right to argue its motion to intervene was timely and, if it was timely, the circuit court should set aside the judgment due to the alleged failure to comply with the notice requirement of the 2017 version of section 537.065….

> For these reasons, I would reverse the judgment below and remand to the circuit court with directions to consider whether [Insurer's] motion to intervene was timely filed within 30 days of when it received appropriate notice of the section 537.065 agreement. *If the motion was timely filed, I would direct the circuit court to consider whether sufficient grounds were shown for sustaining the motion to set aside the judgment and for such other action as the circuit court would deem appropriate in light of the evidence, the law, and this opinion.*

*Id.* at 606-07 (emphasis added). Judge Stith did not indicate that, if the insurer were (upon remand) entitled to intervene, the insurer's rights would be necessarily limited by the timing of their intervention, or by their denial of coverage. Rather, Judge Stith recognized that the intervening insurer would not have "any other rights beyond what any intervenor would have." *Id.*

6

operate from the position that, unless the legislature explicitly spells out the changes it intends, we are not to presume the legislature intended *any* changes. However, we are, in fact, *required* to presume that the legislature intends to change the law when it amends a statute. *State ex rel. Hillman v. Beger*, 566 S.W.3d 600, 607 (Mo. banc 2017). "In construing a statute, the Court must presume that the legislature was aware of the state of the law at the time of its enactment." *Suffian v. Usher,* 19 S.W.3d 130, 133 (Mo. banc 2000) (internal quotes and citation omitted). In this instance, the state of the law prior to the amendment was that third party liability insurers who had refused to indemnify or defend could not intervene in suits between their insured tortfeasor and a claimant in order to contest liability and damages. The legislature is presumed to have known this state of the law when it enacted section 537.065.2, allowing the insured to intervene after it had refused coverage and within 30 days of being notified of the execution of the section 537.065 agreement. The majority opinion not only fails to explain what *was* intended by this change, but also takes it one step further, inferring that, because the legislature did not spell out the rights of the intervening insurer, it necessarily had rights less than other similarly situated intervenors of right. For example, the majority seeks to distinguish the instant action from the rights of an uninsured or underinsured (UIM) insurance carrier to intervene, deny liability, and assert defenses of the tortfeasor, even though that tortfeasor may have already defaulted.[2] The majority notes that UIM coverage is first party coverage, and that in those circumstances the insurer has an independent right to intervene and defend its own interests/exposure that is not derived from its contractual relationship with the tortfeasor; whereas, in the instant action, the insurer provides third party coverage for the tortfeasor, where

---

[2] Cases cited by the majority include *Julian v. Auto. Club Inter-Ins. Exch.*, 728 S.W.2d 321, 322 (Mo. App. E.D. 1987); and *State ex rel. State Farm Mut. Auto. Ins. Co. v. Craig*, 364 S.W.2d 343, 346 (Mo. App. 1963).

7

its right to defend is derived from its contractual obligation with the tortfeasor. The majority then cites *Schmitz v. Great American Assurance Co.,* 337 S.W.3d 700 (Mo. banc 2011), for the premise that, where an insurer refuses to defend its insured against a third party claim, the insured can then enter into a section 537.065 agreement with the claimant, and thereafter the insurer "cannot have its cake and eat it too by both refusing coverage and at the same time continuing to control the terms of settlement in defense of an action it had refused to defend." *Id.* at 710. The majority concludes that because State Farm had refused coverage and then intervened at a time that its insured had already contracted away its right to contest liability and damages in the instant action, State Farm could no longer contest liability and damages, because "nothing in new § 537.065.2…give[s] it *broader* rights than those possessed by its insured, or than any other intervenor would possess." Majority at *16.

The majority appears to rely on the mistaken proposition that State Farm's right to intervene is solely derived from its contractual obligation to indemnify its insured, and, because it had rejected that relationship, it could not expect to intervene and contest liability after the insured had already taken actions that compromised the ***insured's*** ability to contest liability and damages. Tellingly, the majority relies on precedents (such as *Schmitz*) which interpreted an insurer's rights *before* enactment of the 2017 amendments to section 537.065.2. This ignores the majority's own conclusion that "[b]y enacting § 537.065.2, the legislature has declared that, where the insured has entered into an agreement limiting the assets against which a claimant may seek recovery, a liability insurance carrier has a sufficient interest in the determination of the insured's liability to support the insurer's intervention in the underlying litigation, as a matter of right." Majority at *9.

8

The amendments to section 537.065.2 do not just recognize that the insurer has a "sufficient interest" to intervene; the amendments in fact *only* allow intervention once the insured has entered into a section 537.065 agreement, which will have (at very least) compromised the insured's interest in disputing liability and damages (by limiting his financial exposure), which may have (as in the instant action) compromised the insured's very right to contest liability and damages in a court of law, and in which (as in the instant action) the insured and the third party claimant may have agreed to share in damages that might be awarded in a bad faith action against the insurer. In short, amended section 537.065.2 only allows the insurer the opportunity to intervene at a time that it has rejected its contractual obligations with its insured, at a time that its interests are necessarily distinct from its insured, and at time that it may be the only party that has any interest in contesting liability and damages.

Yet the majority posits that, by only allowing the insurer to intervene after the insured has notified it of its execution of a section 537.065 agreement, the legislature intended that the intervenor must be bound to accept (as its own) the insured's compromised position regarding his ability to contest liability and damages. Nothing in section 537.065 expressly limits as such the liability insurer's rights upon intervention. The legal precedents cited by the majority do not limit the right of an intervenor as such, and in fact indicate that, in general, intervenors are not so limited in asserting their defenses,[3] and, specifically, that insurers that provide UIM coverage, though contesting first party coverage in a separate action, may nevertheless intervene and defend a claim in spite of the procedural default of the uninsured (or underinsured) tortfeasor.[4]

---

[3] *See Martin,* 360 S.W.3d at 858 n.5, discussed infra.

[4] *See Beard*, 502 S.W.2d at 419.

9

Ironically, having conceded that the 2017 amendments to section 537.065.2 now allow the insurer an opportunity to intervene that is ***independent of*** its contractual obligations with its insured, the majority cites pre-2017 precedents which indicated that, because an insurer's interest in the suit was then solely dependent on its contractual obligation to its insured, such precedents now limit the scope of the non-contractual (statutory) right of intervention. Put another way, the majority is, in effect, asserting that, even though the newly enacted right to intervene is not derived from (and is actually contingent on the rejection of) the contractual relationship with an insured, the rejection of that contractual relationship now limits the scope of its non-contractual, statutory right to intervene.

State Farm sought leave to intervene in the instant personal injury suit before Collin Knight sought leave to approve the arbitration award. State Farm was then granted leave to intervene, and subsequently filed its own answer to Collin's Second Amended Petition (contesting liability and damages) – all before the circuit court entered its judgment which confirmed the arbitration award, which set liability damages, and which, in effect, denied State Farm the opportunity to conduct its discovery and contest liability and damages.[5] In seeking to contest liability and damages, State Farm is not seeking to expand or "broaden" the rights beyond that of its insured (who has purportedly worked out his own means of establishing liability, damages, and limiting his own exposure); but is simply asserting its ***own*** rights as an intervenor (independent of its contractual relationship with its inured) to contest liability and damages, and to thus limit its potential exposure.

---

[5] In its motion to vacate the arbitration award, State Farm also challenged the award, citing several bases set forth under section 435.405, including allegations that the arbitration was not adversely determined and that it was procured by corruption, fraud, and other undue means. Having been denied the opportunity to conduct discovery, State Farm was also denied the opportunity to develop these challenges to the arbitration award.

10

In *Martin v. Busch*, 360 S.W.3d 854 (Mo. App. E.D. 2011), the issue was whether the wrongful death statute, section 537.080, provided an unconditional right to intervene to all persons in the class defined by subsection one of section one (spouse, children, and parents of the deceased). *Id.* at 856-57. In *Martin*, the parents of the deceased filed motions to intervene in the wrongful death action brought by their ex-son-in-law (as guardian of the deceased's son, their grandson), as they suspected collusion between their ex-son-in-law and the tortfeasor. *Id.* at 855. Around the time of the filing of the motions to intervene, ex-son-in-law (as deceased's son's guardian) filed a motion for approval of a settlement agreement. *Id.* The circuit court denied the parents' motions to intervene, and went ahead and approved the settlement. *Id.* at 856.

The Eastern District concluded that while the wrongful death statute does not require the joinder of all persons identified in that subsection to proceed with a wrongful death suit, if those persons make a timely attempt to intervene, they are entitled to intervene as a matter of right. *Id.* at 857. Given that the motions to intervene were filed within 21 days of the filing of the petition and before the settlement had been approved by the circuit court, and that the parents had an absolute right to intervene, the circuit court erroneously applied the law in denying the parents' motions to intervene. *Id.* at 858. The case was remanded with an order that the circuit court allow the parents to intervene and an explanation that upon intervention, the rights and responsibilities of the parents will be the same as any other party to the litigation. *Id.* (citing *Beard*, 502 S.W.2d at 419).

*Martin* did not state that the intervenor parents were required to be bound by the settlement of their grandson. In fact, it indicated:

> While it is true that an intervenor must accept the action pending as he finds it at the time of intervention his rights thereafter are as broad as those of any other parties to the action. Having been permitted to become a party in order to better

11

> protect his interest, an intervenor is allowed to set up his own affirmative cause or defense appropriate to the case and his intervention.

*Id.* at 858 n.5 (citing *Beard*, 502 S.W.2d at 419). *Martin* implicitly found that even though a settlement had been reached between the ex-son-in-law and the defendant, the intervenor parents did not have to accept the settlement but had every right to question it and to assert their own "affirmative cause or defense" appropriate to the case. Though no specific statutory language in the wrongful death statute set out the rights of an intervenor, in *Martin* the court inferred that intervenor parents should not be denied the opportunity to intervene in their grandson's wrongful death suit in order to litigate liability and damages simply because the grandson's guardian had filed the wrongful death suit first and had executed a settlement (though statutorily authorized to do so). Though the intervenor parents were required to take the case as it stood (with the same rights and responsibilities of other litigants), they were not bound to the same position/settlement of those already in the suit. [6]

In *Beard v. Jackson*, 502 S.W.2d 416 (Mo. App. 1973) (also cited by the majority), *even though the uninsured motorist carrier did not admit its obligation to provide coverage*, it was allowed to intervene in the lawsuit its insured had filed against a third party tortfeasor; and, *even though the third party defendant had been in default*, it was allowed to then assert any defenses that third party could have asserted regarding liability and damages. *Id.* at 418-19. In *Beard*, the plaintiff (first party insured) appealed claiming the insurer should not have been allowed to intervene and contest liability and damages, as it had failed to confirm its obligation to provide

---

[6] I do not suggest (as the majority infers I suggest) that the intervening parents in *Martin* had a right to upset an approved settlement in a separate suit, as that would indeed be contrary to the provisions of sections 537.080.2 and 537.095. Rather, the *Martin* court reversed the judgment approving the settlement; allowed intervention in the **pending** suit; and specifically noted, at footnote 1, that upon remand the intervening parents could address their claims (including that of collusion) in challenging the proposed settlement. *Martin,* 360 S.W.3d at 855 n.1. Similarly, I believe we should reverse the judgment of the circuit court, and allow State Farm to contest liability and damages in this lawsuit.

12

UIM coverage; and, that, once allowed to intervene, it should not have been allowed to assert the

defenses that the defaulting third party had already waived. *Id*. In affirming the trial court,

*Beard* indicated as follows:

> [W]e hold that [Insurer] established that its representation by defendant [its third party tortfeasor] was inadequate and that it might be bound by a judgment in the plaintiff's action…[and] therefore, [Insurer] had a right to intervene [as a matter of right]….
>
> Plaintiff argues that [Insurer] was improperly allowed to raise defenses which [third party] defendant…had not raised. This argument mistakes the basic scope of intervention. While it is true that an intervenor must accept the action pending as he finds it at the time of intervention his rights thereafter are as broad as those of any other parties to the action. Having been permitted to become a party in order to better protect his interest, an intervenor is allowed to set up his own affirmative causes or defense appropriate to the case and his intervention.

*Id.* at 419.

In *Charles v. Consumers Insurance,* 371 S.W.3d 892 (Mo. App. W.D. 2012), we

determined that, even if a UIM insurer initially denied coverage, where it later acknowledges that

coverage *may apply* and where determination of liability *may impair* its ability to protect its

interests, it has the right to intervene and need not concede that it will be bound by the judgment:

"Rather, it is the potential for liability under an underinsurance clause that triggers the 'interest'

recognized by Rule 52.12(a)." *Id.* at 899 (citing *Beard*, 502 S.W.2d at 418).

In *Charles*, we were very clear that, because the UIM insurer's right to intervene was a

matter of right under Rule 52.12(a) and was not contingent on its contractual relationship with its

insured, the cases respecting third party liability coverage did not apply:

> [First party UIM insured] cites us to numerous third party liability claim cases where courts have held that, by denying coverage, an insurer loses its own right to insist on the insured's compliance with the terms of the insurance contract. For example, when an insurer denies coverage after the insured has asked that it defend him against a lawsuit brought by a third party plaintiff, the insurer loses its contractual right to control litigation thereafter. Likewise, even when an insurer denies coverage in a first party liability coverage case, it may not thereafter insist

13

on performance of a consent clause in the contract, whereby the insured agreed to obtain the insurer's consent before settling with a third party. Those principles exist as a function of contract law: the right to control litigation and the right to have one's consent obtained before settling are contractual rights. An insurer loses its contractual rights when it breaches the contract by wrongfully denying coverage. It would be incongruous to permit an insurer to insist on the insured's strict performance of the contract while itself disavowing any obligations thereunder.

But [the UIM insurer] is not attempting to assert any contractual right. Its right to intervene in *this* situation springs—not from the insurance contract—but from Rule 52.12(a). In the third party liability context, the insurer has no interest in the lawsuit, because, until judgment against its insured is actually rendered, it is not adverse to anyone in the case. In such cases, if the insurer has a right to participate in the litigation, it is a contractual right, not a right based on Rule 52.12(a).
By contrast, in the uninsured-underinsured motorist first party claim context, the insurer *immediately* steps into the shoes of the alleged uninsured/underinsured tortfeasor, and thus its interests are adverse to those of its insured *at the time it seeks intervention*. No reasonable person could deny that one standing in the shoes of an alleged tortfeasor has an interest in the litigation.

Thus, in the third party liability claim context, the fact that an insurer has breached its contract by denying coverage is dispositive, for the insurer has no interest in the litigation under Rule 52.12(a) and can participate in the litigation only pursuant to its contractual right to do so, which evaporated the moment the insurer breached the contract.

But when an insurer actually has an interest under Rule 52.12(a), which, as discussed, is typically the case in the uninsured-underinsured motorist first party claim context, its right to intervene is absolute. Failure to concede that coverage will ultimately apply does not divest the insurer of that interest.

*Id.* at 900-02 (internal quotes, citations, and explanatory parentheticals omitted).

The majority argues that, because the rights of the UIM insurer's intervention to contest liability and damages is based on a first party insurance contract, they do not apply in examining the rights of a liability insurer's right to intervene where that right is based on a third party contract. In the context of determining the right of intervention *based solely on that contract* (before the 2017 amendments to section 537.065)*,* I would agree, as did our court in *Charles* (in refusing to apply third party liability insurer precedents when considering whether to deny UIM

14

insurer intervention). However, where the right of intervention is not derived from the liability insurer's contract with its insured, but is instead based on the statutory rights conferred under amended section 537.065.2, the rights of the intervening liability insurer should be no more or less than any other intervenor in "any pending lawsuit" (such as the instant action) which establishes liability and damages adverse to its potential exposure.[7] Like the UIM carrier in *Beard*, State Farm should be allowed to conduct discovery which not only addresses liability and damages, but which also addresses the grounds for challenging approval of an arbitration award. Because the third party insurer's right of intervention is independent of its relationship with its insured, and because its interests necessarily diverge from that of its insured in the very limited time frame in which it *is* allowed to intervene in "any pending suit" under section 537.065.2, the insurer is not bound by the contractual settlement, default, or other compromised position its insured has taken prior to its intervention. Regardless of the means the third-party compromised their ability to control the determination of liability and damages, be it by default (as in *Beard*), be it by direct settlement of liability and damages (as the son's guardian did in *Martin*), or be it by a contractual arrangement to determine damages by arbitration (as the insured did in this instance), State Farm should have to opportunity "to set up [its] own affirmative cause or defense appropriate to the case and [its right of] intervention" recognized by the legislature – a right of intervention allowed by the legislature at a time insurers' interests are necessarily distinct from

---

[7] The majority suggests that this interpretation of section 537.065.2 requires divining the intent of individual legislators in order to allow insurers, like State Farm, to contest liability and damages; and that, because the statute does not specifically spell out those rights, we cannot confidently interpret such statutory intent. However, it seems a much more strained interpretation of amended section 537.065 to conclude (as the majority does) that the legislature allowed such insurers the opportunity to intervene in "any pending action" in order to do nothing. The majority correctly indicates that "[w]e can only implement the statute as the General Assembly actually enacted," but then incorrectly interprets section 537.065.2 in a manner that denies State Farm the right of other similarly situated intervenors.

15

those of their insureds who have executed a section 537.065 agreement. *Martin*, 360 S.W.3d at 858 n.5.

Like the late intervening parents in *Martin*, and like the intervening UIM carrier in *Beard*, State Farm was late to the show and, until granted the statutory right to intervene by the 2017 amendments to section 537.065, was not even allowed to intervene. After the enactment of section 537.065.2, like the parents in *Martin*, and like the UIM carrier in *Beard*, State Farm's late arrival does not deny it the opportunity to intervene (in the narrow 30-day window). Like those similarly situated intervenors, State Farm is entitled to assert its interests, which could include challenging liability and damages. For these reasons, I would reverse the trial court's judgment confirming the arbitration award and remand the case for further proceedings consistent with this opinion.[8]

/s/ *Thomas N. Chapman*
Thomas N. Chapman, Judge

---

[8] The majority's reliance on *Britt v. Otto*, 577 S.W.3d 133 (Mo. App. W.D. 2019), and *Aguilar v. GEICO Casualty, Co.*, 588 S.W.3d 195 (Mo. App. W.D. 2019), as a limitation on State Farm's rights *upon intervention*, is misplaced. Both cases are inapposite, as they involved situations where the insured had sought to intervene more than 30 days after having been notified of the parties' execution of a section 537.065 agreement, and in both cases our court refused to extend to the third party an unconditional right *to intervene* before judgment had been entered. Neither *Britt* nor *Aguilar* addressed the rights of a third party insurer who has successfully intervened within the narrow window recognized under amended section 537.065.2.